W. V. BROWN, LEM BROWN, ISAAC BROWN, O. W. BROWN AND DEWEY BROWN v. G. W. MOBLEY.

(Filed 3 November, 1926.)

**Roads and Highways—Cartways—Ways of Necessity—Statutes—Evidence —Questions for Jury.**

Where there is evidence tending to show that the plaintiffs' lands are situated off of a public highway, with a cartway thereto of great inconvenience, and the board of road supervisors have ordered that a proposed way, more convenient and shorter in distance be laid off, and have held that such way is necessary, reasonable and just, and an appeal has been taken by the owners of the land from this order, and the owners of the lands condemned have further appealed to the Superior Court: *Held,* under the enabling amendments of chapter 135, Public Laws of 1921, and chapter 73, Public Laws, Extra Session of 1921, to 1 C. S., 3836 (now 3 C. S., 3836), that a new and improved passage way may be

opened when the old one has become practically impassable or unreasonably inconvenient, an issue arises for the determination of the jury as to whether sufficient reasons exist for the proposed way, and a judgment of the lower court that the plaintiffs are not entitled to it as a matter of law, is reversible error.

APPEAL by plaintiffs from *Bond, J.,* at March Term, 1926, of DUPLIN. Reversed.

Material facts will be considered in the opinion.

*Stevens, Beasley & Stevens for plaintiff.*
*Gavin & Boney for defendant.*

CLARKSON, J. This is a petition to the board of supervisors of Cypress Creek Township, Duplin County, by plaintiffs who are cultivating or settled upon certain land, describing same, to which there is leading no public road, to lay out and open a cartway from the residence of plaintiff, W. V. Brown, southward over the land of defendant, G. W. Mobley, to Mill Swamp public road, at or near the dividing corner between the lands of the said Mobley and W. V. Brown, on said public road near the Brown schoolhouse.

The supervisors, after notice, as is required by law, heard the petition and decided *"that said cartway is necessary, reasonable and just,"* and ordered a jury summoned, according to law, to lay out same.

The defendant appealed from the finding and order of the supervisors to the board of county commissioners of Duplin County. The county commissioners adjudged that the petitioners are entitled to the cartway as prayed for, and approved the order of the supervisors and ordered the sheriff of the county to summon a jury of five freeholders to view the premises and lay off the cartway, not less than 14 feet, and assess the damages that defendant may sustain thereby, and make their report, etc. From the order of the board of county commissioners defendant appealed to the Superior Court.

The facts: O. W. Brown and his sons own four farms, adjacent to each other, which they are cultivating. There is *no public road* leading to same. The nearest public road is what is known as the Mill Swamp Public Road, which runs to the south and these farms forming the right angle of a square. The petitioners are entirely shut off from said public road by landowners lying between them and the public road. The distance from the southern edge of the petitioner's lands to the public road going south is one-fourth mile, the distance from the east edge of one of the petitioners' lands to the public road, going east is one-half mile. There are two ways from the lands of the petitioners to the public road, one leading in a northeast direction over lands of

others to the said public road, and across which there are two gates. The other way leads south from said lands of petitioners, and then eastward, southward and westward, in a horseshoe shape, around the respondent, Mobley's land, and then southward between said Mobley's land and another person's, to the said public road, at a point on same where the church and school used by petitioners and families are located. The proposed cartway would cross the Mobley land for 113 yards. This would make a straight road and would be 300 yards nearer than the road now traveled by the petitioners. The way leading out to the northeast would make the schoolhouse and the church a mile from the petitioners, with two gates on the same. The proposed new road would occupy something like one-tenth of an acre of defendant's land.

It is contended by defendant that the petitioners have occupied these farms for about forty years, and, during all of that time have had, unmolested and undisturbed, two outlets to the public road, both of which they have been using all the while until the filing of this petition, and, in reality, are using the same now, it being a one-fourth of a mile from the edge of the petitioners' land to the public road going south, and going east one-half mile; and the purpose of this petition is to change the course of one of these outlets in order that they may shorten the distance (and go across defendant's land) one hundred and thirteen yards, and make the outlet straight, which, if permitted to be done, will cut the lands of the respondent, Mobley, into shoestrings, and thereby render practically worthless the small farm which he owns.

The defendant cites the case of *Farmer v. Bright,* 183 N. C., p. 655 (*Hoke, J.,* writing the opinion). A full citation we do not think bears out defendant's contention. It is there said: "While a petitioner who already has an outlet to a public road, reasonably sufficient for the purpose, is not allowed to have an additional or different cartway established, merely because a shorter and better route can be shown, we are of opinion that on the facts as they now appear of record, the plaintiff is entitled to have the question referred to a jury as to whether sufficient reasons exist for the proposed way. It will be noted that the proceedings are instituted *under Public-Local Laws 1921, ch. 291, and not under the general statutes on the subject. C. S., 3836 et seq.* Under a similar special statute, and on substantially similar facts, the Court, in *Cook v. Vickers,* 144 N. C., 312, held that the question of whether sufficient reasons had been shown must be determined by the jury, having due regard for the rights of all persons interested in the matter, and we consider that case decisive of the question as presented on this appeal. The cases referred to and relied upon by the appellee, of *Warlick v. Lowman* (103 N. C., 122), 104 N. C., 403, and others, were

decisions construing the general statute on the subject. It is not necessary now to determine whether the strict interpretation of the general statute as it prevailed in those authorities has not been modified by the rulings of *Cook v. Vickers, supra,* for, as stated, these proceedings are instituted under the *local law,* and the disposition of the case is controlled by the later decision." (Italics ours.)

*Rhodes v. Shelton,* 187 N. C., p. 716, is also cited by defendant. It is there said: "It appearing from the evidence, without sufficient denial, that there is a public road leading to the cultivated land of the petitioner, and there being no sufficient evidence to show that said proposed cartway is 'necessary, reasonable and just,' judgment was entered on motion of respondent, dismissing the petition as in case of nonsuit. In this we find no error. C. S., 3836, and cases cited thereunder." See *Gorham v. R. R.,* 158 N. C., p. 504.

The first decision, *supra,* is construing a special statute, and the second the general statute, C. S., 3836. The old section, 1 C. S., 3836, 1919, has been amended twice: (1) Public Laws 1921, ch. 135; (2) Public Laws, Ex. Session, 1921, ch. 73 (3 C. S., (1924), sec. 3836). Public Laws, Ex. Session, 1921, *supra,* provides that where there is no provision in the law for a board of supervisors in a township, relief may be had by petition to county commissioners, etc., and further amends C. S., 3836 by adding the following: *"Provided,* that wherever any private passageway that has been in use has become *practically impassable or unreasonably inconvenient, a new* or *improved passageway* or *cartway* may be opened, within the discretion of the board in charge of the public roads, in the township in which said passageway or cartway lies, in accordance with the purport and procedure of this section."

Upon the close of the evidence, defendant moved for judgment as in case of nonsuit, C. S., 567, which was granted by the court below. Where there is *any* evidence, it is the duty of the court below to submit it to the jury, and the weight of such evidence is for the jury to determine. On motion as in case of nonsuit, the evidence is to be taken in the light most favorable to plaintiffs and they are entitled to the benefit of every reasonable intendment upon the evidence and every reasonable inference to be drawn therefrom.

The only assignment of error by plaintiffs is the judgment of nonsuit rendered by the court below. In this we think there was error. Nowhere in the briefs of counsel or the record can we find any reference to the amendment to C. S., 3836 by Laws of 1921, Ex. Session, above referred to. In the old law "it shall appear necessary, reasonable and just that such person shall have a private way to a public road," etc. The amendment *proviso* goes further and whenever any private passageway that has been in use and has become *practically impassable or un-*

*reasonably inconvenient, a new* or *improved* passageway or cartway may be opened," etc. This amendment was no doubt passed to give more convenient outlet to farmers and others "settled upon or cultivating any land" to the new and improved State highways (established by Public Laws 1921, ch. 2), and other county highways that were contemplated being built by legislative acts. It may be noted that a highway commission for Duplin County was created by Public-Local Laws 1921, ch. 447, and ch. 338 was an act to authorize issue of bonds for construction of roads in Duplin County. Similar road acts were passed all over the State for new and improved roads. To make better grades, to cross streams, to go over and under railroads, etc., the new and improved highways, in many instances have to be changed, and the passageways or cartways leading to the public roads for convenience must of necessity be altered, and the enabling statute here considered, no doubt, was passed to meet the new and changing conditions. With the improved public highways came automobiles, and under the proviso, *supra,* it was no doubt the intention of the Legislature that new or improved passageways included grade roads for automobile use, could be built, taking into consideration the topography of the land. For ingress and egress more convenient roads had to be constructed by the farmers and others living off the public highway to their homes. No doubt all these new conditions coming to pass, entered into the enabling act, which should be liberally construed. Home-owning in the country should be encouraged in every way—better homes, with convenient roads leading to them. The statute especially provides a jury of landowners to assess the damage the defendant may sustain and give him "just compensation."

In passing, it may be noted that the statute is not limited to persons "settled upon or cultivating any land," but extends further: "or shall own any standing timber, or be working any mines or minerals, or be conducting or operating any industrial or manufacturing establishment or plant, or taking action looking to the erection, equipment, and operation of any such establishment or plant, to which there is leading no public road, or which is not convenient to water affording necessary and proper means of ingress thereto and egress therefrom, and it shall appear necessary, reasonable and just that such person shall have a private way to a public road or watercourse or railroad over the lands of other persons, he may file his petition before the board of supervisors of the township at a regular or special meeting, praying for a cartway, tram or railway to be kept open across such other persons' lands, leading to some public road, ferry, bridge, public landing or watercourse or railroad." 3 C. S., (1924), sec. 3836, Public Laws, ch. 135.

In accordance with the position here taken, the case, upon proper instructions, must be submitted to a jury.

This new act seems not to have been called to the attention of the careful judge who tried the case.

The nonsuit is

Reversed.